IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JACQUELYN REAVES,                    )
                                     )
            Plaintiff,               )
                                     )
       v.                            )      1:24cv837
                                     )
CONDUENT, INC., ALTHEA SANDERS,      )
KIMBERLY COSTA, NANCY ARENT,         )
KATHLEEN WALKER, and                 )
CYNTHIA PINNOCK                      )
                                     )
            Defendant(s).            )
```

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for an order on the Defendants' "Motion to Compel Arbitration and Stay the Proceedings" (Docket Entry 16) (the "Motion"). For the reasons that follow, the Court will grant the Motion.[1]

## BACKGROUND

Jacquelyn Reaves (the "Plaintiff") initiated the instant suit pro se against her former employer, Conduent Incorporated ("Conduent"),[2] and Conduent employees Althea Sanders, Kimberly

---

1 For the reasons stated in Scales v. SSC Winston-Salem Operating Co., No. 1:17cv539, 2017 WL 4467278, at *1 n.1 (M.D.N.C. Oct. 5, 2017), the undersigned will enter an order rather than a recommendation.

2 Defendants note, and the record reflects, that "Plaintiff has improperly named Conduent Incorporated in this lawsuit. Conduent Human Resources Services, LLC [('CHR')] employed Plaintiff, not Conduent Incorporated." (Docket Entry 17 at 1 n.1; see also Docket Entry 17-1, ¶ 9 (describing Plaintiff as "former

Costa, Nancy Arent, Kathleen Walker, and Cynthia Pinnock in their individual capacities (collectively, the "Defendants") (see Docket Entry 1 at 1), alleging employment discrimination pursuant to state and federal law (see id., ¶¶ 272-320) and seeking, inter alia, declaratory judgment, injunctive relief, and compensatory and punitive damages (see id. at 43-44). In response, Defendants jointly filed the Motion requesting that the Court "compel Plaintiff to arbitrate her claims against Defendants in compliance with Conduent's Dispute Resolution Plan and Rules[ and] stay Plaintiff's claims pending arbitration pursuant to 9 U.S.C. § 3." (Docket Entry 16 at 1.) Defendants additionally "request that the Court order Plaintiff to initiate arbitration within 14 days of its order granting th[e] Motion." (Docket Entry 17 at 15.) Plaintiff responded in opposition (Docket Entry 18) (the "Response") and Defendants replied (Docket Entry 19).

The record reflects the following: In October 2022, Plaintiff applied for employment with Conduent via its electronic application program, utilizing a personally-created login name and private password. (Docket Entry 17-1, ¶ 26.) While completing her application, she "was presented with a complete, unabridged copy of [Conduent's Dispute Resolution Plan (the 'DRP,')] via a pop-up

---

employee of CHR, not Conduent Inc.").) CHR "is a downstream subsidiary of Conduent Business Services, LLC[, which] has a single member, Conduent Incorporated . . . ." (Docket Entry 17 at 3 n.2; see also Docket Entry 17-1, ¶ 3 (describing CHR's corporate structure).)

2

window" (id., ¶ 27), and she "clicked her confirmation of agreement to the Applicant Agreement to be bound by the DRP" (id., ¶ 28), which stated: "I HAVE READ THIS APPLICANT MANDATORY ARBITRATION AGREEMENT AND AGREE TO ITS TERMS.  I HAVE HAD THE OPPORTUNITY TO READ THE DRP AND I ALSO AGREE TO BE BOUND BY ITS TERMS" (Docket Entry 17-3 at 3).[3]

After submitting her application, Conduent gave Plaintiff a conditional offer of employment. (See Docket Entry 17, ¶ 30.)  "As part of that conditional offer of employment, [Plaintiff] was required to complete all required onboarding forms/new hire paperwork" (id.), including a "Conditional Offeree Agreement to be bound by the DRP" (id., ¶ 32), which stated: "I HAVE READ THIS CONDITIONAL OFFEREE MANDATORY ARBITRATION AGREEMENT AND AGREE TO ITS TERMS. I HAVE HAD THE OPPORTUNITY TO READ THE DRP AND I ALSO AGREE TO BE BOUND BY ITS TERMS" (Docket Entry 17-4 at 3). Plaintiff clicked her confirmation of that agreement on November 8, 2022.  (Id.)  Further, "[a]s part of her offer acceptance paperwork, [Plaintiff] was also presented with a complete copy of the DRP to print, read, review, and sign."  (Docket Entry 17-1, ¶ 34.)  "She clicked a box acknowledging that she was provided with a full copy of the DRP to print, read, and review" (id.) and electronically signed the DRP on November 10, 2022 (see Docket

---

3   Docket Entry page citations utilize the CM/ECF footer's pagination.

3

Entry 17-5 at 16).  Finally, "[f]rom the time she applied to Conduent . . . through the end of her employment, [Plaintiff] was provided continuous access to the full, unabridged DRP via [Conduent's intranet site]."  (Docket Entry 17-1, ¶ 36; see also id., ¶ 13 (describing Conduent's intranet site).)

The DRP provides, in relevant part, that: "[a]ll Disputes[, meaning 'all legal and equitable claims . . . between persons (which include Employees, Applicants, and [Conduent]) bound by the DRP' (Docket Entry 17-5 at 2, § 2.e),] not otherwise resolved by the [p]arties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial before a court (including a jury trial)" (id. at 4, § 4.b). It further states that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought and the DRP, and who are proper [p]arties to the arbitration, shall be submitted to and ruled on by the arbitrator."  (Id. at 14, § 28.) Notwithstanding that provision, the DRP additionally provides that "[a]ny court with jurisdiction over the [p]arties may issue any temporary relief to preserve the status quo or return the [p]arties to their positions as they existed prior to any alleged improper conduct (including temporary restraining orders and preliminary injunctions)."  (Id. at 14, § 29.f.)

4

## STANDARD OF REVIEW

As an initial matter, Plaintiff proceeds pro se. "A document filed pro se is to be liberally construed," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), but "[t]he court is not expected to advance a pro se litigant's claim or argument . . . . or become an advocate for the pro se litigant." Lindemann-Moses v. Jackmon, 669 F. Supp. 3d 517, 522 (M.D.N.C. 2023), aff'd, No. 23-1698, 2023 WL 8064711 (4th Cir. Nov. 21, 2023) (internal citations and quotation marks omitted).

Moving to the Motion, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, renders enforceable written arbitration contracts, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983); see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) ("To further facilitate arbitration, the FAA authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration, 'provided the applicant for the stay is not in default' of that right." (quoting 9 U.S.C. § 3) (internal

5

brackets omitted)). Entitlement to a Section 3 stay depends on the validity, enforceability, and scope of the arbitration clause. See Wilkerson ex rel. Est. of Wilkerson v. Nelson, 395 F. Supp. 2d 281, 285-86 (M.D.N.C. 2005).

Similarly, a party seeking to compel arbitration under Section 4 must establish: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the opposing party] to arbitrate the dispute." American Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation marks omitted). If the party requesting arbitration establishes these four factors, "the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute." Scales v. SSC Winston-Salem Operating Co., No. 1:17cv539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (citing Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015), and Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)). "This standard is akin to the burden on summary judgment." Chorley, 807 F.3d at 564. "Accordingly, the [C]ourt may consider materials outside the pleadings" in resolving a motion to compel

6

arbitration. CIP Constr. Co. v. Western Sur. Co., No. 1:18cv58, 2018 WL 3520832, at *4 (M.D.N.C. July 20, 2018).

## **DISCUSSION**

Here, Plaintiff contests only the existence of "a written agreement that includes an arbitration provision which purports to cover the dispute," American Gen., 429 F.3d at 87. (See Docket Entry 18 (focusing argument on DRP's validity and enforceability).) "[I]n deciding whether the parties have agreed to submit a particular [dispute] to arbitration, a court is not to rule on the potential merits of the underlying claims." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986). Accordingly, the Court at this stage may resolve, at most, the following two issues: (1) "who decides whether a particular dispute is arbitrable: the arbitrator or the [C]ourt," Peabody Holding Co. v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 101 (4th Cir. 2012) (emphasis omitted), and (2) only if the latter, "whether [the parties] agreed to arbitrate the merits," First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995).

Regarding the former issue, "[i]t is common ground 'that parties can agree to arbitrate gateway questions of arbitrability,' including 'whether their agreement to arbitrate covers a particular controversy.'" Modern Perfection, LLC v. Bank of Am., N.A., 126 F.4th 235, 241 (4th Cir. 2025) (internal brackets omitted) (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010)

7

(internal quotation marks omitted)).  However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." First Options, 514 U.S. at 944.  Courts employ a two-step process to reach such a determination.  See Modern Perfection, 126 F. 4th at 241.  First, the court must "determine for itself that the parties have a contract that provides for arbitration of *some* issues." Id. (emphasis in original); see also Coinbase, Inc. v. Suski, 602 U.S. 143, 149 (2024) ("Before referring a dispute to an arbitrator, . . . the court determines whether a valid arbitration agreement exists." (brackets omitted)).  Second, if such an agreement exists, "the court must next determine whether that contract includes a 'delegation clause' that tasks the arbitrator with determining whether a particular controversy is covered by the parties' agreement to arbitrate." Modern Perfection, 126 F. 4th at 241.

**A. Agreement to Arbitrate**

Defendants contend that "the Court does not need to address the issue [of whether the parties' agreement to arbitrate is valid and enforceable] in light of the clear language of the DRP delegating questions of arbitrability to the arbitrator." (Docket Entry 17 at 8.)  To the contrary, the United States Court of Appeals for the Fourth Circuit has explained:

> While parties may agree to have an arbitrator decide gateway questions of arbitrability, such an agreement

8

> does not preclude a court from deciding that a party never made an agreement to arbitrate *any* issue. That is, it does not erase the court's obligation to determine whether a contract was formed under 9 U.S.C. § 4. Thus . . . allow[ing] the arbitrator to rule on questions of arbitrability . . . does not obviate the need for courts to decide the threshold issue of contract formation.

Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021) (quotation marks and ellipsis removed).

"Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." Id. Under North Carolina law, "[f]ormation of a valid contract requires an offer, acceptance and consideration." Kinesis Advert., Inc. v. Hill, 187 N.C. App. 1, 11, 652 S.E.2d 284, 292 (2007) (internal quotation marks omitted); see also Greene v. OneMain Fin. Grp., LLC, No. 1:17CV848, 2018 WL 5831681, at *4 (M.D.N.C. Nov. 7, 2018) ("[A] mutual promise between an employer and employee to be bound by arbitration is sufficient consideration to form a contract." (citing Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998), and Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 120, 516 S.E.2d 879, 882 (1999))). Further, as relevant here, "the two parties must 'assent to the same thing in the same sense, and their minds meet as to all terms.'" Rowland, 993 F.3d at 258 (quoting Normile v. Miller, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985)).

Procedurally, if the party moving to compel arbitration produces competent evidence of "a written agreement that includes an arbitration provision that purports to cover the dispute,"

9

Dillon v. BMO Harris Bank, N.A., 173 F. Supp. 3d 258, 263 (M.D.N.C. 2016), the party opposing arbitration "must make an unequivocal denial that an arbitration agreement exists — and must also show sufficient facts in support," Chorley, 807 F.3d at 564.  "This burden on the opponent only arises, however, after the proponent produces credible, admissible evidence which satisfies the Court that there was an arbitration agreement."  Dillon, 173 F. Supp. 3d at 264.

In support of the Motion, Defendants submitted evidence, including: the declaration of Diane White (Docket Entry 17-1), Conduent's "Senior Director of Global People Relations" (id., ¶ 1), made "under penalty of perjury" (id. at 8); a complete copy of the DRP with Plaintiff's time-stamped electronic signature (Docket Entry 17-5); Plaintiff's DRP Applicant Agreement, with Plaintiff's time-stamped electronic signature (Docket Entry 17-3); and Plaintiff's DRP Conditional Offeree Agreement, with Plaintiff's time-stamped electronic signature (Docket Entry 17-4).  Plaintiff failed to submit a declaration or any other evidence with her Response or Complaint.  (See Docket Entry 1; Docket Entry 18 (consisting only of argument).)  Even construing Plaintiff's pro se filings as factual statements, she fails to raise a genuine issue of material fact sufficient to defeat the Motion.

Regarding contract formation, Plaintiff argues, without citing any law or evidence on the record, that "mutual agreement was

10

absent when Conduent failed to take the initiative to guarantee Plaintiff fully understood and concurred with the terms of the DRP" (Docket Entry 18 at 2), and that "the DRP was presented in a manner that disallowed Plaintiff to make an informed decision" (id.). Liberally construing the Complaint, Plaintiff further contends, without citing any relevant law, that no meeting of the minds occurred because, "[a]t the time Plaintiff signed the DRP, she did not know what 'arbitration' was" and "believed arbitration was solely executed through the EEOC." (Id. at 4.) She also asserts, without evidentiary support, that she "never received a copy of [the DRP]" (id.), despite acknowledging that, "[b]efore she could submit her application for employment, [she] was required to complete an assessment which involved . . . electronically signing a copy of Conduent's DRP" (id. at 3) and that, after receiving her employment offer, "Conduent forwarded [her] a link to complete onboarding paperwork which required her to sign another version of the DRP" (id. at 4).

First, Defendant's evidence demonstrates, and Plaintiff fails to deny, that "[Plaintiff] was provided the DRP[, which was also accessible on Conduent's intranet site,] multiple times" (Docket Entry 19 at 4; see also Docket Entry 17-1, ¶¶ 12-13, 27-29, 32-34), and that she "electronically signed an agreement . . . at least twice prior to beginning her employment with [Defendant]" (Docket Entry 19 at 4 (emphasis omitted)), acknowledging that she "had the

11

opportunity to read the DRP and [she] also agree[d] to be bound by its terms" (Docket Entry 17-3 at 3; Docket Entry 17-4 at 3). In that regard, North Carolina law provides that:

> one who signs a paper-writing is under a duty to ascertain its contents, and in the absence of a showing that [s]he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from h[er] in fraudulent opposition to h[er] request, [s]he is held to have signed with full knowledge and assent as to what is therein contained.

Nazarova v. Duke Univ., No. 1:16CV910, 2017 WL 823578, at *5 (M.D.N.C. Mar. 2, 2017) (quoting Williams v. Williams, 220 N.C. 806, 18 S.E.2d 364, 366 (1942)).

As Plaintiff concedes that she electronically signed the DRP and two pre-employment documents agreeing to be bound by the DRP, and she presents no evidence that Defendants willfully misled or misinformed her about the DRP's contents, her confusion about "what 'arbitration' was" (Docket Entry 18 at 4) does not render the agreement invalid. In addition, even if the Court credited Plaintiff's unsubstantiated claim that she did not receive a copy of the DRP, "[b]y continuing employment with [Conduent] for [more than] three months after [she] knew that the terms of the DRP would apply to h[er]," Hightower v. GMRI, Inc., 272 F.3d 239, 243 (4th Cir. 2001), as evidenced by her electronically signing multiple documents stating as much (see Docket Entries 17-3, 17-4, & 17-5), "[she] demonstrated acceptance of the DRP," Hightower, 272 F.3d at 243. "Therefore, [she] is bound by its final, binding arbitration provisions." Id.

12

**B. Delegation**

Having determined that the parties entered into a contract to arbitrate, the Court "must next determine whether that contract includes a 'delegation clause' that tasks the arbitrator with determining whether a particular controversy is covered by the parties' agreement to arbitrate." Modern Perfection, 126 F. 4th at 241. In making that determination, "the general policy-based, federal presumption in favor of arbitration . . . is not applied." Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so . . . . The clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd., 130 F.4th 396, 402 (4th Cir. 2025) (internal quotation marks, brackets, and citation omitted). "Accordingly, to meet the 'clear and unmistakable' standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator." Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263, 265-66 (4th Cir. 2019). For example, "clauses that tasked arbitrators with resolving 'all disputes, including the scope and validity of this Arbitration Provision,' 'any issue concerning the validity, enforceability, or scope of this Agreement

13

or this Agreement to Arbitrate,' or 'all disputes relating in any way to the execution and delivery, construction or enforceability of this Agreement," have met this standard. Modern Perfection, 126 F.4th at 242 (internal brackets and ellipses omitted).

The DRP's delegation clause states, in relevant part: "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought and the DRP, and who are proper Parties to the arbitration, shall be submitted to and ruled on by the arbitrator." (Docket Entry 17-5 at 14, § 28.) Such language expressly delegates to the arbitrator "arbitrability disputes, including disputes over the formation [and] validity . . . of the agreement" (id.). See, e.g., Modern Perfection, 126 F. 4th at 242 (finding delegation clause sufficiently clear when it stated that "the arbitrator will resolve disputes about 'the *applicability* of' the portion of the [] agreements containing the arbitration provision" (internal citation omitted) (emphasis in original)); Peabody, 665 F.3d at 102 ("Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect" (some internal quotation marks omitted)).

14

As the DRP contains a sufficiently clear and unmistakable delegation clause, "unless [Plaintiff] challenge[s] the delegation provision specifically, [the Court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [DRP] as a whole for the arbitrator," Rent-A-Center, 561 U.S. at 72. In making a sufficiently specific challenge to a delegation provision, "a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions[, but] must at least reference the [delegation] provision in its opposition to a motion to compel arbitration." Gibbs v. Haynes Invs., LLC, 967 F.3d 332, 338 (4th Cir. 2020) (internal citation and quotation marks omitted); see also Modern Perfection, 126 F.4th at 235 ("[P]arties resisting arbitration cannot get out from under a delegation clause by attacking the rest of the agreement to arbitrate." (internal quotation marks omitted)).

Plaintiff's Response, primarily citing California law, argues that the DRP as a whole is unconscionable, and therefore unenforceable. (See Docket Entry 18 at 4-6.) As "Plaintiff does not make any specific arguments in h[er] Response that the delegation provision itself is unenforceable[, i]nstead [] focus[ing] on the unconscionability of the entire agreement[,] . . . . it is for the arbitrator, not the Court, to determine whether the arbitration agreement is unconscionable."

15

Reed v. Darden Rests., Inc., 213 F. Supp. 3d 813, 819-20 (S.D. W. Va. 2016); see also, e.g., Rent-A-Center, 561 U.S. at 72-74 (holding that the court could not consider the plaintiff's argument regarding unconscionability of arbitration agreement as a whole where the plaintiff "did not contest the validity of the delegation provision in particular").

### 3. Plaintiff's Request for Injunctive Relief

Finally, asserting that "[t]he DRP gives Plaintiff the right to seek injunctive relief in court to prevent irreparable harm pending the conclusion of any [] arbitration" (Docket Entry 18 at 6), Plaintiff argues that her request for "injunctive relief should not be stayed if the court orders her individual damages claims to arbitration" (id. (capitalization omitted)). To that end, the DRP permits parties to seek from a court "temporary relief to preserve the status quo or return the [p]arties to their positions as they existed prior to any alleged improper conduct (including temporary restraining orders and preliminary injunctions)." (Docket Entry 17-5 at 14, § 29.f.) However, the Complaint does not request any temporary injunctive relief; rather, as Plaintiff concedes, it requests only "a permanent injunction" (Docket Entry 18 at 6). (See Docket Entry 1 at 43 (requesting "[a]n injunction against Defendants . . . from engaging in each of the unlawful practices, policies, and patter[n]s set forth [in the Complaint]").) As the DRP grants the arbitrator "the authority to . . . award any and all

16

relief, legal or equitable . . . which a [p]arty could obtain from a court of competent jurisdiction" (Docket Entry 17-5 at 6, § 8.b), and further, as discussed, grants the arbitrator the ability to determine the scope of the arbitration agreement (see id. at 14, § 28), the Court must order all of Plaintiff's claims to arbitration.

## CONCLUSION

The parties entered into a valid agreement to arbitrate, which includes a clear and unmistakable provision delegating matters of arbitrability to the arbitrator.

**IT IS THEREFORE ORDERED** that instant Motion (Docket Entry 16) be **GRANTED**, that this matter is stayed pending resolution of arbitration, and that Plaintiff initiate arbitration proceedings by June 20, 2025.

This 6th day of June, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**